PETITION FOR WRIT OF HABEAS CORPUS
UNDER 28 U.S.C. § 2254

Prisoner's Name:                                    Marion Wilson, Jr.

Prisoner's Number:                                  847877

Place of Confinement:                               Georgia Diagnostic Prison
                                                    Jackson, Georgia  30233

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

MARION WILSON, JR.,                     )
                                        )
                Petitioner,             )
                                        )          Civil Case No. _____
v.                                      )
                                        )          **THIS IS A CAPITAL CASE**
STEPHEN UPTON, Warden,                  )
Georgia Diagnostic Prison,              )
                                        )
                Respondent.             )


**<u>PETITION FOR WRIT OF HABEAS CORPUS</u>**
**<u>BY A PERSON IN STATE CUSTODY</u>**


Brian S. Kammer (Ga. No. 406322)
Georgia Resource Center
303 Elizabeth St., NE
Atlanta, Georgia 30307
(404) 222-9202
georgiaresource@mindspring.com

COUNSEL FOR PETITIONER

## TABLE OF CONTENTS

PROCEDURAL HISTORY ...................................................................................2

CLAIMS FOR RELIEF ......................................................................................4

Claim One:        Petitioner Is Innocent of the Crimes of Which He Was Convicted and Sentenced to Death and His Execution Would Be a Miscarriage of Justice in Violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.......................4

Claim Two:        Petitioner Was Deprived of His Right to the Effective Assistance of Counsel at Trial and on Appeal, in Violation of His Rights Under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, *Strickland v. Washington*, 466 U.S. 668 (1984) and Related Precedent. ..................................................8

Claim Three:      A Death Sentence in this Case Is Disproportionate Punishment, and Such Arbitrary Application of the Death Penalty Violates the Eighth and Fourteenth Amendments to the United States Constitution. ...........................................................19

Claim Four:       The Death Penalty in Georgia Is Imposed Arbitrarily and Capriciously and Amounts to Cruel and Unusual Punishment in Violation of Petitioner's Rights Under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution....................23

Claim Five:       The Trial Court's Denial of Petitioner's Motion for Change of Venue Violated Petitioner's Rights Under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution. .............26

Claim Six:        Petitioner Was Denied Due Process of Law When the Same Jury That Convicted Him Was Responsible for Determining the Appropriate Sentence in Violation of the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution. ...........................................................27

Claim Seven:      The Trial Court's Improper Rulings and Other Errors Deprived Petitioner of a Fair Trial and Reliable Sentencing in Violation of the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution. ...................................................29

Claim Eight:      Misconduct on the Part of the Jurors Violated Petitioner's Rights Under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution. ...................................................34

Claim Nine:          Petitioner Was Denied Due Process of Law by the Instructions
                     Given to the Jury at the Guilt/Innocence Phase of Trial in Violation
                     of the Fifth, Sixth, Eighth and Fourteenth Amendments to the
                     United States Constitution. ....................................................................35

Claim Ten:           Petitioner Was Denied Due Process of Law by the Instructions
                     Given to the Jury at the Sentencing Phase of Trial in Violation of
                     the Fifth, Sixth, Eighth and Fourteenth Amendments to the United
                     States Constitution. ...............................................................................36

        A.      Mitigation ...............................................................................36

        B.      Unanimity ...............................................................................42

        C.      Witness Credibility ................................................................43

        D.      Non-Statutory Aggravating Circumstances ...........................43

Claim Eleven:        Misleading Argument and Misconduct by the Prosecution and Its
                     Agents Deprived Petitioner of His Constitutional Rights to Due
                     Process and a Fair Trial in Violation of the Fifth, Sixth, Eighth and
                     Fourteenth Amendments to the United States Constitution.....................44

Claim Twelve:        The Unified Appeal Procedure Violated Petitioner's Rights Under
                     the Fifth, Sixth, Eighth and Fourteenth Amendments to the United
                     States Constitution. ...............................................................................46

Claim Thirteen:      Petitioner's Trial Was Fraught With Procedural and Substantive
                     Errors That Cannot Be Harmless When Viewed as a Whole Since
                     the Combination of Errors Deprived Him of the Fundamentally
                     Fair Trial Guaranteed Under the Fifth, Sixth, Eighth and
                     Fourteenth Amendments to the United States Constitution.....................48

PRAYER FOR RELIEF ........................................................................................51

NOTICE OF ELECTRONIC FILING AND CERTIFICATE OF SERVICE ............................54

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

MARION WILSON, JR.,        )
        )
        Petitioner,      )
        )      Civil Case No. _____
v.        )
        )
STEPHEN UPTON, Warden,        )
Georgia Diagnostic Prison,        )
        )
        Respondent.     )

## PETITION FOR WRIT OF HABEAS CORPUS
## BY A PERSON IN STATE CUSTODY

Petitioner Marion Wilson, Jr., through undersigned counsel, invokes this Court's jurisdiction pursuant to 28 U.S.C. § 1331 and 28 U.S.C. § 2254.

1.    This petition follows the form established by the Model Form for Use in Applications for Habeas Corpus under 28 U.S.C. § 2254, prescribed by the Rules Governing Section 2254 Cases in The United States District Courts.  It pleads Petitioner's claims for relief and alleges the constitutional errors raised.  In conformity with the form and practice, the petition does not make detailed legal argument, address procedural issues or affirmative defenses that the Respondent may choose to raise, or analyze in any detail the state court decisions under the provisions of 28 U.S.C. § 2254(d) and (e).  Petitioner shall respond in memoranda of law to any procedural issues the Respondent may raise as affirmative defenses and shall submit briefing on the merits of the claims properly before the Court, which will include analysis under § 2254(d) and (e).

2.    This petition states claims that have been raised in state courts in exhaustion of state remedies.  It is being filed on this date in order to comply with the limitations period of the

Anti-Terrorism and Effective Death Penalty Act. However, the investigation and research of Petitioner's case continues, and he may seek permission of the Court to amend, correct or modify the claims based upon the result of this continued investigation and research.

3.      Petitioner is indigent and was so found by the Georgia state courts during trial, direct appeal and state post-conviction proceedings. Petitioner requests leave to proceed *in forma pauperis* in this proceeding via motion filed herewith.

4.      Petitioner seeks relief in the form of an order granting the writ of habeas corpus as to his conviction and death sentence, and granting all other relief that the Court may deem just, proper and equitable. Petitioner submits that the state court convictions, death sentence and affirmances on direct appeal in state habeas corpus proceedings resulted from violations of Petitioner's rights under the First, Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution. In general, Petitioner avers that the state courts' findings below are contrary to and/or are an unreasonable application of clearly established federal law, as determined by the United States Supreme Court; involved an unreasonable determination of the facts in light of the evidence; and/or involved the unreasonable and arbitrary denial of relief. *See* 28 U.S.C. § 2254(d); *Williams v. Taylor*, 529 U.S. 362 (2000).

## PROCEDURAL HISTORY

5.      Petitioner is a person in the custody of the State of Georgia under the terms of verdicts entered November 7, 1997, in the Superior Court of Baldwin County, Georgia. Pursuant to these judgments, Petitioner received a sentence of death by electrocution for one count of malice murder, life imprisonment for one count of armed robbery; twenty years imprisonment for hijacking a motor vehicle; five years imprisonment for possession of a firearm during the commission of a felony; and five years imprisonment for possession of a sawed-off shotgun.

Petitioner was also convicted of felony-murder; however, that conviction was vacated by operation of law.  Petitioner is incarcerated at the Georgia Diagnostic Prison in Jackson, Georgia.

6.      Petitioner pled not guilty to the charges against him.

7.      The Supreme Court of Georgia affirmed Petitioner's conviction and sentence of death on November 1, 1999.  *Wilson v. State*, 271 Ga. 811, 525 S.E.2d 339 (1999).  A timely filed motion for reconsideration was denied on December 20, 1999.

8.      Petitioner thereafter filed a Petition for Writ of Certiorari in the United States Supreme Court.  On October 2, 2000, the Court denied the Petition for Writ of Certiorari.

9.      On January 19, 2001, Petitioner filed a Petition for Writ of Habeas Corpus, a Motion for Stay of Execution, and a Motion for Leave to Proceed *In Forma Pauperis* in the Superior Court of Butts County.  Petitioner was granted indigent status for purposes of pursuing state habeas corpus remedies.  An amended petition was filed, and after an evidentiary hearing and submission of post-hearing briefs, the state habeas court denied the writ on December 1, 2008.[1]

10.      On January 30, 2009, Petitioner filed an Application for Certificate of Probable Cause to Appeal the order of the state habeas court, which the Supreme Court of Georgia summarily denied on May 3, 2010.

11.      On September 30, 2010, Petitioner filed a Petition for Writ of Certiorari in the United States Supreme Court.  The Petition was denied on December 6, 2010.

---

[1] The final order of the Superior Court of Butts County denying Petitioner's petition for writ of habeas corpus was taken nearly verbatim from a proposed order submitted by the State.  That proposed order – and the resultant final order of the court – is riddled with factual errors.  Therefore, the state habeas court's conclusions in Petitioner's case were reached without even a minimal review of the extensive evidence adduced in post-conviction proceedings.  As further argument in this proceeding will develop, because Petitioner's state habeas process was unfair, the factual findings of the state habeas court are entitled to no deference.

## CLAIMS FOR RELIEF

**Claim One:**    **Petitioner Is Innocent of the Crimes of Which He Was Convicted and Sentenced to Death and His Execution Would Be a Miscarriage of Justice in Violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.**

12.    All other claims and allegations in this Petition are incorporated in this Claim by this reference.

13.    The punishment of an innocent person violates the cruel and unusual punishment clause of the Eighth Amendment to the United States Constitution.  Moreover, if an innocent person is punished for a crime, that person's constitutional due process rights to liberty and life have necessarily been violated.

14.    Society recoils at State execution of an innocent person.  Such a barbaric act is "at odds with contemporary standards of fairness and decency," *Spaziano v. Florida*, 468 U.S. 447, 465 (1984), and would be "bound to offend even hardened sensibilities." *Rochin v. California*, 342 U.S. 165, 172 (1952).  As Judge Learned Hand recognized, our justice system is "haunted by the ghost of the innocent man."  Charles E. Silberman, *Criminal Violence Criminal Justice* 262 (1978); *see also Pulley v. Harris*, 465 U.S. 37, 68 (1984) ("The execution of someone who is completely innocent . . . [is] the ultimate horror case.") (Brennan, J., dissenting) (quoting John Kaplan, *The Problem of Capital Punishment*, 1983 U. Ill. L. Rev. 555, 576) (internal quotations omitted).  "The infliction of a severe punishment by the State cannot comport with human dignity when it is nothing more than the pointless infliction of suffering." *Furman v. Georgia*, 408 U.S. 238, 279 (1972) (Brennan, J., concurring).

15.    The "natural abhorrence civilized societies feel at killing" an innocent person (*Ford v. Wainwright*, 477 U.S. 399, 409 (1986)), requires that the law remove that possibility as much as is humanly possible.  Society's abhorrence at the idea of executing an innocent person

finds expression in the United States Supreme Court's Eighth Amendment and Fourteenth Amendment jurisprudence.  First, as a matter of substantive Fourteenth Amendment law, "no person can be punished criminally save upon proof of some specific illegal conduct."  *Schad v. Arizona*, 501 U.S. 624, 633 (1991).  And, of course, that proof must be beyond a reasonable doubt.  *See Jackson v. Virginia*, 443 U.S. 307 (1979).

16.     Additionally, as a matter of substantive Eighth Amendment law, "a person who has not in fact killed, attempted to kill, or intended that a killing take place or that lethal force be used may not be sentenced to death."  *Cabana v. Bullock*, 474 U.S. 376, 386 (1986).  If such a sentence is imposed, the "Eighth Amendment violation can be adequately remedied by any court that has the power to find the facts and vacate the sentence," and "prevent the execution."  *Id.* at 386, 390; *Tison v. Arizona*, 481 U.S. 137 (1987); *Enmund v. Florida*, 458 U.S. 782 (1982).  The most basic equitable principle is that courts must prevent fundamental miscarriages of justice. *McClesky v. Zant*, 499 U.S. 467, 494-95 (1991).

17.     The record of Petitioner's trial reveals that the State offered little evidence of Petitioner's conduct prior to or during the commission of the crimes.  This evidence consisted of testimony of witnesses who observed the events prior to the crimes and an audio recording of Petitioner's interrogation by the Chief Deputy Sheriff of Baldwin County, Howard Sills, and Sheriff Bill Masse.  Two witnesses – Kenya and Chico Moseley – testified that they saw Petitioner and co-defendant Robert Butts enter the victim's automobile at the Wal-Mart.  The audio recording of Petitioner's interrogation revealed only that Petitioner was in the back seat of the victim's car when Butts committed the crimes.  There was no other account of Petitioner's conduct prior to or during the armed robbery and murder presented to the jury during the guilt/innocence phase.

18.     The evidence that Petitioner participated in the commission of the crimes was therefore entirely circumstantial.  Georgia law requires that when a case against a criminal defendant is entirely circumstantial, a conviction cannot be had if the circumstantial evidence supports a reasonable hypothesis of the defendant's innocence.  Section 24-4-6 of the Georgia Code provides, "[t]o warrant a conviction on circumstantial evidence, the proved facts shall not only be consistent with the hypothesis of guilt, but *shall exclude* every other reasonable hypothesis save that of the guilt of the accused."  O.C.G.A. § 24-4-6 (emphasis added).

19.     Section 24-4-6 has been interpreted to mean that when the circumstantial evidence supports more than one theory – one consistent with guilt and another with innocence – it does not exclude every other reasonable hypothesis and is therefore not sufficient to prove the defendant's guilt beyond a reasonable doubt.  *Carr v. State*, 119 Ga. App. 540, 167 S.E.2d 707 (1969).  And for nearly a century, other cases interpreting the statute have held that proven facts must be inconsistent with innocence to warrant a conviction on circumstantial evidence.  *See, e.g.*, *Riley v. State*, 1 Ga. App. 651, 57 S.E. 1031 (1907).

20.     Under Section 24-4-6, Petitioner could only have properly been convicted if the only possible inference from the circumstantial evidence of his conduct prior to or during the crimes is that he planned or participated in their commission.  Said differently, as long as the circumstantial evidence was consistent with the hypothesis that Petitioner was merely present when the crimes occurred, the jury could not properly convict him on the murder charge.

21.     The theory that Petitioner was merely present when the crimes occurred is perfectly reasonable in light of the circumstantial evidence.  The testimony of the eye-witnesses shows simply that Petitioner was at the Wal-Mart with Robert Butts and that Petitioner entered the car with Butts and the victim.  Petitioner's tape-recorded interview adds only that he was in

the back seat of the car when the crimes occurred and that Butts had earlier told Petitioner that he wanted to rob someone.  Petitioner in the audio recording stated:  "I thought he was joking . . . . I didn't know he was for real."  Transcript p.1607.  Petitioner had explained that Butts did not make his statement on the day of the robbery.

22.    Thus, the evidence presented at trial leads reasonably to the inference that Petitioner went along with Butts without any intention to encourage or assist in the commission of a crime and that he was in the back seat when Butts decided to make good on his earlier bravado.

23.    The reasonableness of this hypothesis is only strengthened when additional evidence not presented to the jury during the guilt/innocence phase is considered.  This evidence includes, but is not limited to, testimony from three jailhouse confidants and from Raphael Baker that Petitioner's co-defendant, Robert Butts, confessed to being the triggerman, and that Butts committed the murder after a spontaneous interaction between Butts and the victim that did not involve Petitioner; testimony from Sheriff Sills, which he provided at the Butts trial, that Butts was the one who possessed and concealed the murder weapon while Butts and Petitioner were at the Wal-Mart; testimony from Felicia Ray that Petitioner was talking to her while Butts was in the Wal-Mart with Parks and that Petitioner could not have been carrying a loaded shotgun; and testimony from Angela Johnson that the alleged murder weapon was found at the house she shared with Petitioner because Butts had come to her home the day after the murder with the weapon and told Petitioner to "hold it" for him.

**Claim Two:**      **Petitioner Was Deprived of His Right to the Effective Assistance of Counsel at Trial and on Appeal, in Violation of His Rights Under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution, *Strickland v. Washington*, 466 U.S. 668 (1984) and Related Precedent.**

24.      All other claims and allegations in this Petition are incorporated in this Claim by this reference.

25.      Counsel's unreasonable actions and omissions at the guilt and sentencing phases of Petitioner's trial prejudiced the outcomes of both phases.

26.      Petitioner was denied his right to the effective assistance of counsel at his capital trial and appeal in violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution. *See Strickland v. Washington*, 466 U.S. 668 (1984); *Williams v. Taylor*, 529 U.S. 362 (2000); *Turpin v. Christenson*, 269 Ga. 226, 497 S.E.2d 216 (1998); *Turpin v. Lipham*, 270 Ga. 208, 216, 510 S.E.2d 32, 40 (1998).

27.      Counsel's ineffectiveness includes, but is not limited to, the following:

a.   Both defense counsel accepted the appointment to represent Petitioner knowing that neither of them had ever tried a capital case or had attended any specialized training or education programs dealing with the defense of death penalty cases.  Further, lead counsel affirmatively misrepresented to the trial court and Petitioner counsel's credentials and experience in capital defense practice, thereby depriving the trial court and Petitioner of an opportunity to appoint "counsel [Petitioner] believe[d] to be best."  *U.S. v. Gonzalez-Lopez*, 548 U.S. 140, 146 (2006).

b.   Lead counsel accepted and maintained the appointment as Petitioner's lawyer despite having a conflict of interest due to his acceptance, just months before trial, of a job as a Special Assistant Attorney General for the State of Georgia.

c.  Petitioner's trial counsel failed to research adequately and argue Georgia law regarding convictions based on circumstantial evidence, the result of which was a failure to present the proper legal basis for why Petitioner's conviction could not be had as a matter of law, under O.C.G.A. § 24-4-6.  Multiple Georgia cases suggest that such a motion would have been successful.  *See Carr v. State*, 119 Ga. App. 540, 167 S.E.2d 707 (1969); *Roberson v. State*, 145 Ga. App. 687, 244 S.E.2d 629 (1978); *Kreager v. State*, 148 Ga. App. 548, 252 S.E.2d 1 (1978); *Johnson v. State*, 159 Ga. App. 497, 283 S.E.2d 711 (1981).  In *Carr*, the Georgia Court of Appeals held that it was reversible error for the trial court to deny a motion for a directed verdict by a defendant charged with homicide when the evidence against the defendant was circumstantial and failed to exclude every other reasonable hypothesis as to the cause of the victim's death.  Here, the evidence did not preclude the theory that Petitioner was merely present.

d.  Counsel failed to object to inflammatory and improper prosecution statements during opening and closing statements, including but not limited to statements regarding the failure of Petitioner's co-defendant Butts to give a statement and to Petitioner's exercise of his right not to testify.

e.  Due to ignorance of applicable law, Petitioner's trial counsel failed to use the proper *Turner v. State*, 267 Ga. 149, 476 S.E.2d 252 (1996), procedures for offering exculpatory hearsay evidence during the guilt phase, including but not limited to the testimony of three individuals to whom co-defendant Butts

-9-

confessed to killing Mr. Parks, thereby prejudicing Petitioner's defense by undermining his ability to present a persuasive "mere presence" defense.

f.   Counsel failed during the guilt-innocence phase to prepare and present testimony of critical witnesses, such as Angela Johnson, who witnessed Robert Butts giving Petitioner the murder weapon, a sawed-off shotgun, the day after the crime, and ordering him to keep it.  This testimony would have further supported a "mere presence" defense by showing that Butts had control of the murder weapon.  The prosecution made much of the fact that the murder weapon was found under Petitioner's bed; the jury never heard Ms. Johnson corroborate that the weapon got there because Mr. Butts gave it to Petitioner after the crime occurred.  Additionally, Rafael Baker would have testified that Butts confessed on the night of the killing to being the triggerman, which would also have supported Petitioner's mere presence defense, and Felicia Ray would have testified that Petitioner never entered the Wal-Mart and could not have been carrying a concealed shotgun.

g.   Counsel failed to develop through pretrial investigation the factual bases for showing that only Petitioner's co-defendant, Mr. Butts, had previously worked and been familiar with the murder victim.  This evidence would have supported Petitioner's "mere presence" defense by showing that Mr. Butts alone had reason for concern about being identified by the murder victim, thereby motivating Mr. Butts to kill Mr. Parks.

h.   Counsel failed to investigate and to litigate the suppression of Petitioner's taped statements to law enforcement, which were then admitted and denied

Petitioner a fair trial and reliable sentencing.  Counsel failed to adequately redact Petitioner's taped statements to law enforcement, thus allowing the jury to hear prejudicial and inflammatory evidence.

i.   Counsel failed to file pretrial motions to protect Petitioner's right to a fair trial and sentencing, including discovery motions that would have provided defense counsel with an opportunity to learn of, prepare for, and seek the exclusion of putative expert testimony regarding Petitioner's alleged membership in the Folks gang.  Subsequently, due to ignorance of applicable legal precedent, counsel failed to object and provided no rebuttal at all to the prosecution's inflammatory use of testimony regarding gang membership and activities despite the availability of clear legal precedent that could have prevented the introduction of any gang evidence at both phases of Petitioner's trial.  *See Dawson v. Delaware*, 503 U.S. 159, 166 (1992).  Nor did counsel utilize other available federal and state court precedent regarding evidence to attempt to challenge, redact, or exclude altogether the gang-related testimony and evidence.

j.   Counsel failed adequately to take steps to effectuate a plea agreement with the district attorney in a case that was not suited to be a death penalty case in comparison with other murder cases.

k.   Counsel failed to conduct an adequate examination of potential jurors with regard to their understanding of the presumption of innocence, potential bias regarding the death penalty, and other issues during voir dire to ensure Petitioner's right to a fair trial and reliable sentencing; failed adequately to

challenge the venue of the trial in Baldwin County; failed adequately to challenge the trial court's improper excusal of certain jurors for hardship reasons; failed adequately to challenge the trial court's improper voir dire of potential jurors; failed to challenge the trial court's refusal to excuse certain jurors (particularly those affiliated with the Georgia Department of Corrections, given the victim's job as a DoC employee); failed adequately to challenge the district attorney's improper voir dire; and generally failed adequately to protect Petitioner's right to a jury pool and jury that properly represented the community and that could afford Petitioner the fair trial and reliable sentencing to which he was entitled under the federal constitution.

l. Counsel failed to object to the absence of the trial judge during a jury view of the crime scene. This failure is particularly egregious because the bus carrying the jury actually stopped at the scene and the jury wandered freely about, despite the trial court's order (and the Georgia Supreme Court's understanding, *see Wilson v. State*, 271 Ga. at 817 & n.3, 525 S.E.2d at 346 & n.3) that the bus was simply to "momentar[ily] pause" at the scene without allowing the jury to disembark.

m. Counsel failed to object to the admission of several items of evidence and testimony offered by the State during the guilt and sentencing phases of trial. Timely objections would have ensured that certain improper evidence was not received and considered by the jury.

n. Counsel failed to make adequate or timely objection to the prosecutor's improper and prejudicial comments at opening and closing argument at the

guilt and sentencing phases of trial, including the prosecutor's improper invitation to the jury to put itself in the place of the victim. Counsel thereafter failed adequately to litigate a motion for mistrial based on this improper argument.

o. Counsel failed to object to substitution of a new judge in place of the judge who had presided over preliminary matters.

p. Counsel failed to raise proper and timely objections to improper charges given by the trial court to the jury at the conclusion of the guilt and sentencing phases of trial. These charges include but are not limited to the improper instructions regarding the burden of proof, the "mere presence" defense, the jury's role in assessing credibility, mitigation, aggravation, unanimity and the various sentencing options.

q. Counsel failed to make adequate objections to items of improper evidence and testimony offered by the State in aggravation at the penalty phase of trial. For example, counsel failed to challenge or object to unfairly prejudicial gang-affiliation expert testimony and unsubstantiated testimony that Petitioner had previously shot a migrant worker. Moreover, counsel failed to make a request for an instruction regarding the State's burden of proof with regard to unadjudicated offenses offered in aggravation of punishment.

r. Counsel failed to mount an adequate voir dire and cross-examination of the state's witnesses, particularly including the state's so-called "gang experts" as to the basis of their knowledge of gangs and gang practices, as well as Petitioner's alleged ties to gang activity in the locality of the crime.

Competent voir dire and cross-examination would have revealed that these witnesses were not competent to be qualified as experts and were engaging in rank and unfounded speculation and conjecture that was without basis in fact and excludable under rules of evidence and relevant court precedent.

s.   Counsel failed to present closing argument that adequately and meaningfully discussed the evidence and set forth reasons for the jury to acquit or to impose a sentence less than death.

t.   Counsel failed to make adequate and timely requests for investigative support so that counsel could have conducted a thorough pretrial investigation into available defenses at both phases of trial.  For example, counsel failed to renew its motion for funds for various experts when the case proceeded to trial even though Judge George specifically directed counsel to do so.

u.   Counsel, without strategic reasons for doing so, failed adequately to investigate and to present mitigation evidence during the sentencing phase. *See, e.g.*, *Sears v. Upton*, 561 U.S. ___, 130 S. Ct. 3259 (2010) (*per curiam*); *Porter v. McCollum*, 558 U.S. ___, 130 S. Ct. 447 (2009) (*per curiam*); *Rompilla v. Beard*, 545 U.S. 374 (2005); *Wiggins v. Smith*, 539 U.S. 510 (2003); *Williams v. Taylor*, 529 U.S. 362 (2000); *Williams v. Allen*, 542 F.3d 1326 (11th Cir. 2008); *Dobbs v. Turpin*, 142 F.3d 1383 (11th Cir. 1998); *Jackson v, Herring*, 42 F.3d 1350 (11th Cir. 1995); *Baxter v. Thomas*, 45 F.3d 1501(11th Cir. 1995); *Horton v. Zant*, 941 F.2d 1449 (11th Cir. 1991); *Blanco v. Singletary*, 943 F.2d 1477 (11th Cir. 1991); *Middleton v. Dugger*, 849 F.2d

491 (11th Cir. 1988).  Counsel's failure in this regard includes, but is not limited to, the following:

   i.   Counsel failed adequately to prepare its only sentencing phase expert, defense psychiatrist Dr. Kohanski, with Petitioner's complete medical and mental health history and with critical facts concerning his traumatic family life and upbringing.  For example, counsel did not locate and did not provide Dr. Kohanski with information, such as that contained in Petitioner's Department of Family and Child Services ("DFACS") files, or the testimony of teachers, social services workers, relatives or others on the occurrence of medical trauma from defendant's youth, including possible organic brain damage.  As a result of counsel's failure to prepare Dr. Kohanski, counsel was unable to effectively challenge the State's case against Petitioner, especially in the sentencing phase.

   ii.  Counsel failed to secure the services of necessary experts, including, but not limited to, a neuropsychologist.  Counsel failed to ensure that Petitioner was afforded a competent mental health evaluation, including neuropsychological and neurological testing that would have conclusively revealed the presence of organic brain damage, which leads to other psychological problems.  Such evidence would have had critical significance in mitigation of punishment.  Because proper testing was not performed, defense psychiatrist Dr. Kohanski could only speculate vaguely as to the presence of organic brain damage.  In

-15-

fact, Dr Kohanski stated at trial that she would have been interested in seeing the results of further testing, and the prosecutor was thus effectively able to exploit the insufficiency of medical evidence and to call into question the reliability and credibility of Dr. Kohanski's testimony. Counsel also failed to secure the services of a sociologist or other expert on gang and youth violence issues, leaving Petitioner with no rebuttal to the highly prejudicial gang testimony that counsel allowed to be admitted.

iii.   Counsel failed to conduct an adequate pretrial investigation into Petitioner's family life and background to uncover and present to the jury evidence in mitigation of punishment. As a result, the jury failed to hear compelling evidence, such as that contained in Petitioner's DFACS files, juvenile court files and other records, as well as the testimony of numerous witnesses, in mitigation of punishment as to the extent of Petitioner's physical abuse and neglect during childhood, his deprived and impoverished background, his lack of a father figure or role model, violence and filthy conditions in the home, his exposure to drug and alcohol abuse, and the neglect of his care by the juvenile justice system in Georgia. Also, virtually no testimony was presented of the available information going to Petitioner's upstanding character traits including his positive efforts to overcome adversity and hardship and his generosity and kindness to others. Red flags that should have

alerted trial counsel to this evidence were in counsel's possession, but they failed to follow up on those flags.

iv.   Counsel unreasonably failed to interview or call numerous witnesses whose testimony would have been relevant at both phases of trial. Counsel presented only an incomplete picture of Petitioner's background by calling witnesses who were unprepared to present the jury with a complete picture of Petitioner as a unique human being. Counsel provided the jury with an incomplete history of Petitioner's life, eliciting only cursory testimony from Petitioner's mother and a psychiatrist. *See, e.g.*, *Sears v. Upton*, 130 S. Ct. 3259 (2010); *Porter v. McCollum*, 130 S. Ct. 447 (2009). Numerous other witnesses, including family members, friends, teachers, social workers, and juvenile justice case workers were available who would have provided the jury with accurate and compelling testimony about Petitioner's life and the circumstances of the crime. The names of these witnesses were in the possession of, or otherwise reasonably available to, trial counsel, but counsel did not bother to follow up on those leads. This testimony would not have been cumulative and would have had critical significance in mitigation of punishment. Such testimony would have been consistent with defense counsel's strategy at both phases of trial.

v.   Due to lack of funds and experience in death penalty sentencing matters, the mitigation case presented by counsel consisted of three witnesses: Dr. Kohanski, who was inadequately prepared; a defense

investigator, who did little more than convey second-hand, hearsay information about Butts' role in the offense; and brief testimony by Petitioner's mother.  This was ineffective, particularly in light of the readily available information uncovered during this habeas proceeding, and it prejudiced the outcome of the trial.

v.  Counsel failed to raise a challenge under *Daubert v. Merrell Dow Pharmaceuticals, Inc.*, 509 U.S. 579 (1993), as well as relevant state evidentiary rules and legal precedent, as to the reliability and admissibility of putative expert testimony regarding gangs and Petitioner's alleged connection with gang activity.  Moreover, at trial (and on appeal) counsel failed, due to ignorance of the applicable law, to challenge the gang testimony as improper under *Dawson v. Delaware*, 503 U.S. 159, 166 (1992), even though there was no evidence suggesting that the Parks murder was tied to gang activity.  Counsel also failed to object to opinion testimony regarding gang activities unrelated to Petitioner that was offered by lay witnesses, with no showing of expert qualifications.  Counsel also failed to object to the prosecution's use of testimony of a putative expert to soil the record with hearsay from anonymous informants claiming that Petitioner was the "head" of a 250-member Folks gang in Baldwin County guilty of Satan-worshipping as well as thousands of violent felonies, among other calumnies with no basis in actual fact.  The sentencing phase was thus infected by improper gang testimony that could not have survived a proper *Daubert* or *Dawson* challenge, or a competent application of state evidentiary rules and court precedent, thereby

-18-

undermining the fundamental fairness and reliability of the resulting death sentence.

    w. Counsel rendered prejudicially deficient performance at closing argument in the sentencing phase of Petitioner's trial.

    x. Counsel rendered prejudicially deficient performance at the sentencing phase by failing to argue that a sentence of death was disproportionate and therefore precluded by *Enmund v. Florida*, 458 U.S. 782 (1982), and its progeny.

28.    Counsel's unreasonable actions and omissions prejudiced the outcomes of both the guilt and sentencing phases of trial.

29.    Counsel rendered prejudicially deficient performance at motion for new trial and on direct appeal. *See, e.g., Anders v. California*, 386 U.S. 738 (1967); *Pennsylvania v. Finney*, 481 U.S. 551 (1990); *Douglas v. California*, 372 U.S. 353 (1963); *Hooks v. Wainwright*, 775 F.2d 1433, 1437 (11th Cir. 1985); *Dankert v. Wharton*, 733 F.2d 1537 (11th Cir. 1984).

30.    But for counsel's ineffective representation, there is a reasonable probability that the result of each phase of trial and appeal would have been different. *See Strickland v. Washington*, 466 U.S. 668 (1984).

**Claim Three:**    **A Death Sentence in this Case Is Disproportionate Punishment, and Such Arbitrary Application of the Death Penalty Violates the Eighth and Fourteenth Amendments to the United States Constitution.**

31.    All other claims and allegations in this Petition are incorporated in this Claim by this reference.

32.    Since *Furman v. Georgia*, 408 U.S. 238, 310, 313 (1972) (Stewart, J. concurring, White, J., concurring), the United States Supreme Court has required states that permit capital punishment to institute procedures that protect against the "wanton" and "freakish" imposition of

-19-

the death penalty and to provide a "meaningful basis for distinguishing the few cases in which it is imposed from the many cases in which it is not."  In overturning a Florida death sentence on what amounted to proportionality grounds, the United States Supreme Court noted:

> If a State has determined that death should be an available penalty for certain crimes, then it must administer that penalty in a way that can rationally distinguish between those individuals for whom death is an appropriate sanction and those for whom it is not." *Spazian v. Florida*, 469 U.S. 447, 460 (1984).  The Constitution prohibits the arbitrary or irrational imposition of the death penalty. *Id.* at 466-467.  We have emphasized repeatedly the crucial role of meaningful appellate review in ensuring that the death penalty is not imposed arbitrarily or irrationally.  *See, e.g.*, *Clemons v. Mississippi*, 494 U.S. 738, 749 (1990) (citing cases); *Gregg v. Georgia*, 428 U.S. 153 (1976).

*Parker v. Dugger*, 498 U.S. 308, 321 (1991).

33.     A proportionality review is not constitutionally required where it is not part of the state's statutory scheme for fair imposition of the death penalty.  *Pulley v. Harris*, 465 U.S. 37 (1984).  However, in Georgia, a proportionality review is a statutory requirement, and one of the pillars of reliability in sentencing used by the United States Supreme Court to uphold the Georgia death penalty statute in *Gregg v. Georgia*, 428 U.S. 153 (1976); O.C.G.A. § 17-10-35(c)(3).[2]

34.     The goal of proportionality review is that similarly situated defendants receive similar sentences and that the process be rational and not capricious.

35.     The proportionality review conducted in the State of Georgia is constitutionally infirm, both in general and as applied.  The constitutional mandate against disproportionate sentencing does not merely require that the Georgia Supreme Court be able to find other instances in which the death penalty is applied to similar facts, but rather, to view the Georgia system as a whole to see that sentences are proportionate across the spectrum.

---

[2] "With regard to the sentence the [Georgia Supreme Court] shall determine:  *** (3) Whether the sentence of death is excessive or disproportionate to the penalty imposed in similar cases, considering both the crime and the defendant."  O.C.G.A. § 17-10-35(c)(3).

36.     To conduct an equitable proportionality review, it is critical that this Court review other similarly situated defendants in cases where life sentences resulted.

37.     The proportionality review in Petitioner's direct appeal consisted of a boilerplate listing of cases allegedly similar to Petitioner's conviction.  *See Wilson v. State*, 271 Ga. 811, 823-824, 525 S.E.2d 339, 351 (1999).

38.     The following is a list of all the cases cited by the Georgia Supreme Court (271 Ga. at 824, Appendix) as being similar to Petitioner's case, along with an explanatory description:  *Lee v. State*, 270 Ga. 798, 514 S.E.2d 1 (1999) (affirming death penalty for defendant who shot and killed victim); *Whatley v. State*, 270 Ga. 296, 509 S.E.2d 45 (1998) (affirming death penalty for defendant who shot and killed a store owner during a robbery); *Bishop v. State*, 268 Ga. 286, 486 S.E.2d 887 (1997) (affirming death penalty for defendant who beat a victim to death after stealing the victim's car); *Jones v. State*, 267 Ga. 592, 481 S.E.2d 821 (1997) (affirming death penalty for defendant who beat a man to death while stealing his truck; the defendant's accomplice in the truck theft did not receive the death penalty); *Carr v. State*, 267 Ga. 547, 480 S.E.2d 583 (1997) (affirming death penalty for defendant who stabbed a man to death during a robbery; the defendant's accomplice in the robbery did not receive the death penalty); *McClain v. State*, 267 Ga. 378, 477 S.E.2d 814 (1996) (affirming death penalty for defendant who shot a man to death during a robbery); *Greene v. State*, 266 Ga. 439, 469 S.E.2d 129 (1996) (affirming death penalty for defendant who stabbed a man to death during a robbery); *Crowe v. State*, 265 Ga. 582, 458 S.E.2d 799 (1995) (affirming death penalty for defendant who beat a man to death during a robbery); *Mobley v. State*, 265 Ga. 292, 455 S.E.2d 61 (1995) (affirming death penalty for defendant who shot a man to death during a robbery); *Christenson v. State*, 262 Ga. 638, 423 S.E.2d 252 (1992) (affirming death penalty for defendant who shot a

man to death during an attempted robbery; defendant later resentenced to life without parole);
*Meders v. State*, 261 Ga. 806, 411 S.E.2d 491 (1992) (affirming death penalty for defendant who shot a man to death during a robbery); *Ferrell v. State*, 261 Ga. 115, 401 S.E.2d 741 (1991) (affirming death penalty for defendant who shot his grandmother to death while robbing her); *Stripling v. State*, 261 Ga. 1, 401 S.E.2d 500 (1991) (affirming death penalty for defendant who killed two restaurant employees during a robbery); *Cargill v. State*, 255 Ga. 616, 340 S.E.2d 891 (1986) (affirming death penalty for defendant who shot two people during a robbery, the defendant's accomplice did not receive the death penalty); *Ingram v. State*, 253 Ga. 622, 323 S.E.2d 801 (1984) (affirming death penalty for defendant who shot victim during a robbery).

39.     In contrast to these cases, Petitioner was convicted and sentenced to death for offenses in fact initiated and committed by Robert Earl Butts, Jr.  Butts, accompanied by Petitioner, went to a local Wal-Mart.  While at the Wal-Mart, Butts approached the victim and asked for a ride.  Petitioner and Butts then entered the victim's vehicle.  Butts sat in the front passenger seat and Petitioner sat in the backseat.  Shortly thereafter, Butts directed the victim where to drive, revealed a sawed-off shotgun, ordered the victim to exit the vehicle, and then shot the victim in the back of the head.  Petitioner remained with Butts while Butts attempted to dispose of the vehicle.  Testimony in Butts's trial revealed that he, not Petitioner, was the triggerman in the murder.  Indeed, Butts was later convicted and sentenced to death for being the actual murderer.  *Butts v. State*, 273 Ga. 760, 761, 546 S.E.2d 472, 477 (Ga. 2001) ("Butts then fired one fatal shot to the back of Parks's head with a shotgun.").

40.     Thus, the similarity of these cases to Petitioner's case is limited to the fact that the cases involved intentional killings committed during the commissions of armed robberies or motor vehicle hijackings.  In all of the cases, the death penalty was imposed only on the

defendant who actually committed the murder.  In fact, the co-defendants in *Jones*, *Carr*, and *Cargill*, who were active participants in the underlying robberies, received only life sentences. Viewed against the backdrop of the cases actually similar to Petitioner's case, the imposition of the death penalty in Petitioner's case is excessive.

41.    Moreover, a sentence of death in this case is disproportionate under *Cabana v. Bullock*, 474 U.S. 376, 386 (1986) and *Enmund v. Florida*, 458 U.S. 782 (1982).  As explained above, and incorporated herein, the State's sole basis for seeking the death sentence was its argument that Petitioner was the triggerman.  Later, the State determined that Butts in fact shot the victim, charged him with murder, and obtained a death sentence therefor.  Accordingly, there is no constitutional justification for imposing a sentence of death against Petitioner, as he did not in fact shoot the victim, and there was insufficient evidence, and no argument at his sentencing, that he either attempted to kill the victim or intended that the victim be killed.

42.    These errors violated Petitioner's rights under the United States Constitution. Accordingly, this Court should reverse Petitioner's sentence of death.[3]

**Claim Four:       The Death Penalty in Georgia Is Imposed Arbitrarily and Capriciously and Amounts to Cruel and Unusual Punishment in Violation of Petitioner's Rights Under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.**

43.    All other claims and allegations in this Petition are incorporated in this Claim by this reference.

44.    Petitioner's sentence of death was imposed arbitrarily and capriciously, and pursuant to a pattern and practice of discrimination in the administration and imposition of the

---

[3] To the extent trial counsel failed to raise this claim at trial or to litigate it effectively, counsel were ineffective.  To the extent counsel failed to raise this claim on direct appeal or to research, brief, and argue it effectively, appellate counsel were ineffective.  Counsel's deficient performance actually prejudiced Petitioner.

death penalty in Georgia, thereby rendering Petitioner's sentence of death unlawful and in violation of Petitioner's rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.   The grounds for this claim include, but are not limited to, the following:

a.   Georgia's statutory death penalty procedures, as applied, do not result in fair, nondiscriminatory imposition of the death sentence, and therefore violate the Eighth Amendment to the United States Constitution.

b.   The death penalty is imposed arbitrarily, capriciously, and discriminatorily in the State of Georgia, and was so imposed in Petitioner's case.

c.   Georgia cases similar to Petitioner's case with regard to the nature and circumstances of the offense, prior record, culpability, and life and character of the accused, have resulted in lesser punishments than death.  *See, e.g.*, Bill Rankin et al., *An AJC Special Report, A Matter of Life & Death: Death Still Arbitrary*, Atlanta J.-Const., Sept. 23, 2007, at A1 (analysis of 2,328 murder convictions in Georgia from January 1, 1995 through December 31, 2004, including Petitioner's case, reveals that factors including geography, race and lack of funds determine whether the death penalty will be sought and, therefore, in the words of former Georgia Supreme Court Chief Justice Norman Fletcher, the imposition of the death penalty in Georgia is "like a roulette wheel").

d.   Georgia cases more aggravated than Petitioner's case with regard to the nature and circumstances of the offense, prior record, culpability, and life and character of the accused, have resulted in lesser punishments than death.

e.  There is no constitutionally permissible way to distinguish the few cases in which the death penalty has been imposed, and Petitioner's case in particular, from the many similar cases in which a lesser punishment has been imposed.

f.  There exists in Georgia a pattern and practice of prosecuting authorities, courts, and juries to discriminate on the basis of race, gender, and poverty in deciding whether to seek or impose the death penalty in cases similar to that of Petitioner, thereby making the imposition of the sentence of death against Petitioner a violation of his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

g.  Execution by means of lethal injection constitutes cruel and unusual punishment in that it involves pain and suffering, and bodily mutilation, including destruction of internal organs.  Lethal injections, as practiced by the State of Georgia, are carried out by untrained technicians who are likely to cause unnecessary pain and suffering, for example, in the course of inserting intravenous lines into the prisoner's veins.  This was demonstrated graphically during the execution of Jose High on November 6, 2001, during which technicians were unable to find suitable veins in which to inject the lethal drugs and had to perform a surgical procedure on Mr. High's neck in order to open a path in his body for the drugs to be administered.  Witnesses reported that Mr. High was visibly traumatized by the procedure.  Moreover, the anesthesia used to induce unconsciousness is fast-acting and may wear off before the prisoner's life ends but after the additional paralytic and lethal drugs have taken effect.  This raises the unacceptable likelihood that the

prisoner may be awake and in excruciating pain as the lethal drugs stop his heart and collapse his lungs. To subject a human being to such torture violates the "evolving standards of decency which mark the progress of a maturing society." *Trop v. Dulles*, 356 U.S. 86, 101 (1958).[4]

**Claim Five:**      **The Trial Court's Denial of Petitioner's Motion for Change of Venue Violated Petitioner's Rights Under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.**

45.      All other claims and allegations in this Petition are incorporated in this Claim by this reference.

46.      The trial court's denial of petitioner's motion for a change of venue violated Petitioner's due process rights under the Fifth and Fourteenth Amendments to the United States Constitution.

47.      The traverse jury for Petitioner's trial was drawn from Baldwin County. Within Baldwin County there are a number of prison facilities, including Baldwin State Prison and Boot Camp, Bostick State Prison, Rivers State Prison, and Scott State Prison and Boot Camp.

48.      The victim in this case, Donovan Parks, was an employee of the Department of Corrections in Baldwin County.

49.      More than one quarter of the prospective jurors were employed by, retired from employment with, or related to someone employed by, the Georgia Department of Corrections. Approximately one quarter of the forty selected jurors were employed by, retired from employment with, or related to someone employed by, the Department of Corrections, and thus could not serve as fair and impartial factfinders in Petitioner's trial.

---

[4] To the extent trial counsel failed adequately to litigate this claim at trial or on appeal, counsel rendered ineffective assistance, and Petitioner was actually prejudiced thereby.

50.     Because the trial court denied Petitioner's motion for change of venue, Petitioner was unable to have his case heard by a fair and impartial jury.

**Claim Six:**          **Petitioner Was Denied Due Process of Law When the Same Jury That Convicted Him Was Responsible for Determining the Appropriate Sentence in Violation of the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.**

51.     All other claims and allegations in this Petition are incorporated in this Claim by this reference.

52.     In Petitioner's case, the trial court should have bifurcated the guilt/innocence proceedings and the sentencing proceedings by empaneling two different panels of jurors, one panel to hear evidence on the issues of guilt or innocence and the other panel to make a determination of sentence in the event that the Petitioner was to be convicted.

53.     In death penalty cases, all jurors are "death-qualified," a process by which those unable to impose a death sentence and those who will automatically impose death are excluded. This process is often referred to as *Witherspoon* voir dire, named for the opinion of the United States Supreme Court in *Witherspoon v. Illinois*, 391 U.S. 510 (1968).  For example, O.C.G.A. § 15-12-164 (a)(4) requires that the jurors be asked whether they are opposed to capital punishment.[5]  During this process, the jurors who must first decide the issue of the defendant's guilt or innocence are also being asked to consider whether or not they would be able to inflict a particular punishment.  Those jurors who are "death-qualified" are undoubtedly predisposed to convict a defendant because, before the court makes a final determination as to the jurors' qualifications by asking the statutory questions, the jurors are subjected to questions from each

---

[5] Incidentally, this question does not elicit other points of view on the death penalty that could interfere with their ability to be fair and impartial, *see, e.g.*, *Pope v. State*, 256 Ga. 195, 345 S.E.2d 831 (1986) (overruled on other grounds), nor does it elicit answers as to a juror's ability to set aside any personal views and decide the case on the evidence. *Gray v. Mississippi*, 481 U.S. 648 (1987); *David v. Georgia*, 429 U.S. 122 (1976); *Nance v. State*, 272 Ga. 217, 526 S.E.2d 560 (2000).

side concerning each juror's opinion about the efficacy of the different choices of punishment. The presumption that the defendant is not guilty is entirely subordinated to the issue of punishment. The jurors are essentially told that the system considers the defendant guilty and the jurors must therefore be queried as to their opinions on punishment before they have had a trial to determine guilt or innocence. In fact, they are probed about the death penalty before they are asked a single question about the case they may be selected to try.

54.     If a prospective juror is repeatedly asked if he is prepared to vote for the execution of an individual, he will no longer presume that the jury will be deciding only guilt/innocence. Inherent in the questioning on punishment is the assertion that this case will proceed to the penalty phase of trial. The reasonable, "death-qualified" juror will be prepared not only to reach that phase, but also be more likely to convict that individual. Logic and common sense dictate that the juror's attention is focused, before hearing any evidence about the guilt or innocence of the defendant, on what the punishment should be. The focusing of the juror's attention on punishment before he or she has been asked to determine whether or not the defendant is guilty of the offenses for which he has been charged means that he has been denied the right to a "fair trial by a panel of impartial, 'indifferent' jurors," which "violates even the minimal standards of due process." *Morizan v. Illinois*, 504 U.S. 719, 727 (1992). "Jurors should come to a case free from even a suspicion of prejudgment of the issues to be tried – as to the parties, the subject matter, or the credibility of witnesses." *Parisie v. State*, 178 Ga. App. 857, 344 S.E.2d 727, 729 (1986).

55.     The denial of a bifurcated trial in a death penalty case violates the Eighth Amendment's prohibitions against cruel and unusual punishment. *Grigsby v. Mabry*, 758 F.2d 226 (8th Cir. 1985), *rev'd on other grounds*, 476 U.S. 162 (1986). Although a process whereby

*Witherspoon* jurors are excluded from service with impunity is not violative of the Sixth Amendment's right to have a cross-section of the community, *see Lockhart v. McCree*, 476 U.S. 162 (1986), a process whereby an individual is sentenced to death by a juror who is conviction-prone is violative of the Eighth Amendment's protection against cruel and unusual punishments.

56.     Finally, Petitioner's right to due process was violated when the jury that had rejected Petitioner's guilt phase defenses, had convicted him, and had necessarily developed a bias against the credibility of the Petitioner and Petitioner's counsel, was expected to sit as fair and impartial decision-makers on the sensitive issue of penalty.   Because a separate penalty phase jury should have been empaneled, Petitioner was denied due process of law, in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.[6]

**Claim Seven:**       **The Trial Court's Improper Rulings and Other Errors Deprived Petitioner of a Fair Trial and Reliable Sentencing in Violation of the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.**

57.     All other claims and allegations in this Petition are incorporated in this Claim by this reference.

58.     Errors committed by the trial court include, but are not limited to the following:

   a.  The trial court improperly failed to strike for cause several venire-persons whose attitudes towards the death penalty would have prevented or substantially impaired their performance as jurors.   The trial court erred by phrasing its voir dire questions in a manner that suggested to jurors who gave neutral responses that they were or should be in favor of the death penalty. The court erred in its rulings on motions to challenge prospective jurors for

---

[6] To the extent that counsel failed to raise or litigate this issue effectively during trial or on appeal, counsel's deficient performance was unreasonable and Petitioner was prejudiced thereby.  *Strickland*, 466 U.S. 668.

cause based on their attitudes about the death penalty and stated biases, engaged in improper voir dire, and allowed fair and impartial jurors to be struck for cause.[7] *Witherspoon v. Illinois*, 391 U.S. 510 (1968); *Wainwright v. Witt*, 469 U.S. 412 (1985).   The court's errors in this regard deprived Petitioner of a fair and impartial jury in violation of Petitioner's rights under the Constitution of the State of Georgia and the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

b.   The trial court excused potential jurors for improper reasons under the rubric of "hardship."

c.   The trial court improperly restricted voir dire relating to several relevant areas of inquiry, including the credibility of law enforcement officials and the jurors attitudes regarding race.

d.   The trial court erred in denying the defense motion to change venue in light of the predominant role of the Department of Corrections in Baldwin County and the victim's employment by the Department of Corrections.

e.   The trial court erred in empaneling on the petit jury persons employed by the Department of Corrections.

---

[7] To the extent that the trial court's failure to strike for cause was due to the failure of trial counsel to move the court to strike particular venirepersons, the failure to strike was due to the failure of trial counsel to perform effectively in this regard.  A reasonable probability exists that, had counsel performed effectively, the jury would have been drawn from a more impartial pool, and the outcome of Petitioner's capital trial and sentencing would have been different.  To the extent that trial counsel failed to move effectively the court to strike incompetent jurors, that failure was unreasonably deficient performance by counsel, and Petitioner was prejudiced by counsel's failure.  To the extent counsel failed to provide the court with adequate argument in favor of retaining jurors who leaned against the death penalty, counsel rendered prejudicially deficient performance.

f.   The trial court erred in admitting various items of prejudicial, unreliable, unsubstantiated and irrelevant evidence tendered by the State at both phases of trial.

g.   The trial court erred in admitting into evidence a photograph of the victim taken while he was alive and gruesome photographs of the victim not relevant to any issue in the case.

h.   The trial court erred in admitting materially inaccurate and prejudicial evidence and arguments during the sentencing phase to the effect that Petitioner was a member of the Folks gang and regarding gang activity in general.   The prosecution made no link between Petitioner's alleged gang membership and the motivation for the victim's murder, as required by *Dawson v. Delaware*, 503 U.S. 159, 166 (1992).   Accordingly, the court should have excluded as unduly prejudicial the putative expert testimony on gangs and the evidence regarding Petitioner's alleged membership in a gang.

i.   The trial court erred in denying Petitioner funds to hire an expert sociologist to counter the prejudicial and inflammatory "gang evidence" improperly presented by the prosecution or to support the testimony of Petitioner's expert, Dr. Kohanski.

j.   The trial court erred in failing to give requested charges on residual doubt and presumption of life sentencing.

k.   The trial court erred in allowing the prosecution to introduce improper, unreliable and irrelevant evidence in aggravation at sentencing, as well as evidence of which the defense had not been provided adequate notice.

l.   The trial court erred in admitting highly prejudicial evidence of acts Petitioner committed as a juvenile.

m.   The trial court erred in failing to require the State to disclose certain items of evidence in a timely manner so as to afford the defense an opportunity to conduct an adequate investigation.

n.   The trial court erred in failing to require the State to disclose certain items of evidence of an exculpatory or impeaching nature to the defense.

o.   The trial court erred in failing to grant the defense motions for directed verdicts due to lack of evidence sufficient to support guilt and/or the statutory aggravating factors, and in failing to direct verdicts of acquittal or life sentence on its own motion.

p.   The trial court erred in failing to grant a mistrial or give Petitioner a new trial when the prosecutor engaged in misconduct during the guilt-innocence phase closing argument and during Petitioner's counsel's closing argument.

q.   The trial court erred in failing to grant a mistrial or give Petitioner a new trial when the prosecution improperly elicited prejudicial hearsay testimony that Petitioner was the triggerman.

r.   The trial court erred in failing to grant a mistrial or new trial when the prosecution improperly relied on an inflammatory opening statement and evidence and argument about the victim's character and the effect of his death on his family during the guilt-innocence phase.

s.   The trial court erred in failing to grant a mistrial or new trial in response to the prosecutor's improper and prejudicial comments at closing argument at the

guilt and sentencing phases of trial, including the prosecutor's improper invitation to the jury to put itself in the place of the victim.

t.  The trial court erred by failing to suppress Petitioner's taped statements to law enforcement, which were then admitted, and by denying Petitioner's Motion to Suppress Defendant's Statements and Motion for an Order Exclusion of Involuntary Admissions and Confessions, thus denying Petitioner a fair trial and reliable sentencing.

u.  The trial court erred by failing to ensure that Petitioners' taped statements to law enforcement were properly redacted, thus allowing the jury to hear irrelevant, prejudicial and potentially inflammatory evidence.

v.  The trial court erred by excluding exculpatory hearsay evidence during the guilt phase of trial, thereby prejudicing Petitioner's defense by undermining his ability to present a persuasive "mere presence" defense.

w.  The trial court erred in failing to accompany and supervise the jury during its view of the crime scene.  This error was compounded by the jurors' failure to abide by the agreed-upon procedure in which the bus on which they were traveling would "momentarily pause" at the crime scene without anyone leaving the bus.  In fact, as has been developed during this habeas proceeding (in contrast to arguments made by the State and adopted by the Georgia Supreme Court on direct appeal), jurors left the bus at the crime scene and wandered about without judicial oversight or supervision.

x.  The trial court erred in permitting presiding judges to change during the pendency of the case, thereby violating Petitioner's right to a fair trial.

y.  The trial court erred in failing to remove lead counsel, Thomas O'Donnell, from the case due to the conflict of interest resulting from his acceptance, just months before trial, of a job as a Special Assistant Attorney General for the State of Georgia, thereby denying Petitioner of his right to effective assistance of counsel.

z.  The trial court made other improper rulings and otherwise conducted the trial in such a way as to deprive Petitioner of a fair trial and reliable sentencing, in violation of the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments.

aa. The trial court failed to provide adequate funds to allow counsel to conduct a competent pretrial investigation and to secure the services of necessary experts and testing.  *Ake v. Oklahoma*, 470 U.S. 68 (1985); *Ford v.Gaither*, 953 F.3d 1296 (11th Cir. 1992).[8]

**Claim Eight:** **Misconduct on the Part of the Jurors Violated Petitioner's Rights Under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.**

59.  All other claims and allegations in this Petition are incorporated in this Claim by this reference.

60.  Misconduct on the part of the jurors included, but was not limited to, improper consideration of matters extraneous to the trial; violating the court's order regarding the crime scene view by leaving the bus and inspecting the scene without supervision or oversight by the trial judge; improper racial attitudes, which infected the deliberations of the jury; false or misleading responses of jurors on voir dire; improper biases of jurors, which infected their

---

[8] To the extent that trial counsel failed adequately to litigate and/or make timely objections with regard to the above-described claims, or to raise them adequately at motion for new trial or direct appeal, counsel rendered prejudicially deficient performance.

deliberations; improper exposure to the prejudicial opinions of third parties; improper communications with third parties; improper communications with bailiffs; improper ex parte communications with the trial judge; and improperly prejudging the guilt/innocence and penalty phases of Petitioner's trial.[9]  *See, e.g.*, *Spencer v. Georgia*, 500 U.S. 960 (1991) (Kennedy, J., concurring in denial of cert.) (racial epithets used in jury room); *McCleskey v. Kemp*, 481 U.S. 279 (1987) (racial animus of decision makers); *Moore v. State*, 172 Ga. App. 844, 324 S.E.2d 760 (1984) (jury consideration of extraneous legal research); *Jones v. Kemp*, 706 F. Supp. 1534 (N.D. Ga. 1989) (jury consideration of extraneous religious information); *Turner v. Louisiana*, 379 U.S. 466 (1965) (improper communications with bailiffs); *Rushen v. Spain*, 464 U.S. 114 (1983) (improper communications with trial judge); *United States v. Scott*, 854 F.2d 697, 700 (5th Cir. 1988) (failure to respond truthfully on voir dire); *Radford v. State*, 263 Ga. 47, 426 S.E.2d 868 (1993) (improper communications with bailiffs); *Turpin v. Todd*, 268 Ga. 820, 493 S.E.2d 900 (1997) (same).[10]

**Claim Nine:**          **Petitioner Was Denied Due Process of Law by the Instructions Given to the Jury at the Guilt/Innocence Phase of Trial in Violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.**

61.    All other claims and allegations in this Petition are incorporated in this Claim by this reference.

---

[9] To the extent that Petitioner's counsel failed to protect Petitioner's rights in this regard, counsel's performance was unreasonably deficient, and Petitioner was prejudiced thereby.  To the extent the trial court was implicated in or aware of any of the jury misconduct, and yet failed to advise Petitioner or correct the misconduct, the court's actions constitute an independent violation of Petitioner's rights.  To the extent that the State, through any of its entities, was implicated in or aware of any of the jury misconduct, the State's actions or omissions also deprived Petitioner of his constitutional rights.

[10] To the extent that Petitioner's counsel failed to argue, develop, or present these issues, failed to adequately preserve objections thereto, or failed to effectively litigate these issues on direct appeal, Petitioner's counsel rendered ineffective assistance, and Petitioner was prejudiced thereby.

62.    The trial court's instructions to the jury in the guilt/innocence phase of Petitioner's trial violated Petitioner's rights under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.  The trial court's charge included, but was not limited to, the following errors:  the trial court improperly charged the jury on the burden of proof beyond a reasonable doubt, permitting the jury to convict Petitioner upon less than "utmost certainty" of guilt; improperly shifted the burden of proof to the defendant; improperly charged the jury regarding impeachment of witnesses, improperly charged vague and essentially standardless definitions of statutory terms; improperly charged the jury on the "mere presence" defense; and improperly charged the jury on the offenses charged in the indictment.[11]

**Claim Ten:**　　　**Petitioner Was Denied Due Process of Law by the Instructions Given to the Jury at the Sentencing Phase of Trial in Violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.**

63.    All other claims and allegations in this Petition are incorporated in this Claim by this reference.

64.    The sentencing phase jury instructions in this case, both individually and collectively, were ambiguous, insufficient, vague, and confusing, contrary to law, and the sentencer's decision based upon these instructions is unreliable, in violation of the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

**A.　　Mitigation**

65.    The trial court improperly instructed the jury regarding the definition of mitigation evidence, to wit:

---

[11] To the extent the Petitioner's counsel failed adequately to preserve objections to the trial court's charge or effectively litigate these issues on appeal, Petitioner's counsel rendered ineffective assistance.  Had counsel performed reasonably, there is a reasonable probability that the outcome of the guilt/innocence phase of trial would have been different.

> You shall also consider the facts and circumstances, if any, in extenuation, mitigation or aggravation of punishment.  Mitigating or extenuating facts or circumstances are those which you, the jury, find do not constitute a justification or excuse for the offense in question, but which, in fairness and mercy may be considered as extenuating or reducing the degree of moral culpability or blame.

Transcript p. 2508.  The court's definition of mitigation was too preclusive in that the sentencer is restricted to offense-related mitigation and cannot consider background and social history as mitigation.  In *Lockett v. Ohio*, 438 U.S. 586 (1978), the United States Supreme Court held that the defendant in a capital trial has the right to introduce virtually any evidence in mitigation during the penalty phase of trial.  Any instruction arbitrarily limiting what may be considered as mitigation, as was given here, is thus rendered unconstitutional.  The court also instructed the jury that it should "consider the facts and circumstances, *if any*, in extenuation, mitigation or aggravation of punishment."  Transcript p. 2508 (emphasis added).  This instruction improperly implied to the jury the court's belief that no facts warranting mitigation existed and invaded the province of the jury.

66.    A jury instruction on mitigating circumstances is constitutionally invalid if there is *any* "reasonable possibility that a juror will misunderstand the meaning and function of mitigating circumstances."  *Peek v. Kemp*, 784 F.2d 1479, 1494 (11th Cir. 1986).   Where mitigating evidence is present, "the absence of any explanatory instructions on mitigation creates a reasonable possibility that the jury misunderstood the meaning and the function of the mitigating evidence in the sentencing deliberations."  *Cunningham v. Zant*, 928 F.2d 1006, 1012 (11th Cir. 1991).  At Petitioner's sentencing hearing, the trial court failed to:  (1) provide even the most basic examples of mitigating circumstances; (2) explain that even a minimum quantum of mitigating evidence, under the law, could be considered by the jury in reaching a life sentence; (3) explain that anything could be considered in mitigation; (4) explain that unlike the guilt/innocence phase of the trial, there was no need for the jury to weigh mitigating evidence

-37-

against any aggravating evidence, and (5) explain that mitigating circumstances could be relevant to punishment and not merely the degree of culpability or blame.

67.    There is no constitutional requirement that evidence mitigating against a sentence of death be introduced at the penalty phase, as opposed to the guilt phase.  The Eighth Amendment mandates that a capital sentencing jury be free to consider *any* mitigating evidence, irrespective of who introduces it, when it is introduced, or how it is introduced.  *See, e.g.*, *Franklin v. Lynaugh*, 487 U.S. 164, 174-76 (1988) (jury permitted to consider evidence presented at the guilt phase when considering sentence).   There *was* evidence relevant to mitigation presented to Petitioner's jury, though not adequately presented as such due to the ineffective performance of Petitioner's counsel.  The jury, however, was not told what mitigating evidence was, why it should be considered, or its significance.  Nor was the jury provided helpful, concrete examples of mitigating circumstances.  *Peek*, 784 F.2d at 1490-91.  Because there *was* mitigating evidence presented, "the absence of any explanatory instructions on mitigation create[d] a reasonable possibility that the jury misunderstood the meaning and function of the mitigating evidence in the sentencing deliberations."  *Cunningham*, 927 F.2d at 1012.

68.    The sentencing phase instruction on mitigating circumstances thus effectively violated the rule established in the companion cases of *Lockett*, 438 U.S. 586, and *Bell v. Ohio*, 438 U.S. 637 (1978).  *Lockett* and *Bell* invalidated the Ohio death penalty statute because it did not permit sufficient individualized consideration of mitigating factors.  *Lockett* held that the Eighth and Fourteenth Amendments require that a sentencing jury must not be precluded from considering *any* relevant mitigating factor.  438 U.S. at 604.  In a subsequent case, *Eddings v. Oklahoma*, 455 U.S. 104 (1982), the Court reaffirmed the holding in *Lockett* and vacated the

death sentence because, as in Petitioner's case, "it was as if the trial judge had instructed a jury to disregard the mitigating evidence [the defendant] proffered on his behalf." *Eddings*, 455 U.S. at 114.

69.    One of the most fundamental Eighth Amendment principles is that the jury's discretion in a capital case must be guided by objective standards, *see Godfrey v. Georgia*, 446 U.S. 420, 428 (1980), and that the sentencer cannot be precluded from considering, as a mitigating factor, any aspect of the defendant's character or record or any of the circumstances of the offense. *Lockett*, 438 U.S. at 604-05. Furthermore, the instructions at the penalty phase of a capital case must provide the jury with a "vehicle for expressing its reasoned moral response to any available mitigating evidence" relevant to the defendant's "background or character or the circumstances of the crime." *Franklin*, 487 U.S. at 164 (O'Connor, J., concurring) (internal quotations omitted). The Court reaffirmed its commitment to this basic principle in *Penry v. Lynaugh*, 492 U.S. 302 (1989). Thus, beyond simply allowing a defendant to present mitigating evidence, "[t]he sentencer must also be able to consider and give effect to that evidence in imposing sentence." *Penry*, 492 U.S. at 319.

70.    In *Penry*, the Court held that the Texas instructions before it were defective because they did not provide the jury with a mechanism to consider Penry's evidence of mental retardation and child abuse. The Court concluded:

> In this case, in the absence of instructions informing the jury that it could consider and give effect to the mitigating evidence of Penry's mental retardation and abused background by declining to impose the death penalty, we conclude that the jury was not provided with a vehicle for expressing its 'reasoned moral response' to that evidence in rendering its sentencing decision. Our reasoning in *Lockett* and *Eddings* thus compels a remand for resentencing so that we do not "risk that the death penalty will be imposed in spite of factors which may call for a less severe penalty." *Lockett*, 438 U.S. at 605; *Eddings*, 455 U.S. at 119 (O'Connor, J., concurring). "When the choice is between life and death, that risk is

unacceptable and incompatible with the commands of the Eighth and Fourteenth Amendments." *Lockett*, 438 U.S. at 605.

*Penry*, 492 U.S. at 328.

71.     As in *Penry*, the jury instructions here failed to explain adequately the nature and function of mitigating circumstances and also created a constitutionally impermissible risk that the jury failed to consider available mitigating circumstances, though they may not have been adequately presented as such by defense counsel.  This is especially true in this case because the Georgia death penalty statute does not include statutory mitigating circumstances.  The trial court gave the jury a charge on specific aggravating circumstances (Transcript p. 2509-10), as well as a copy of the statutory aggravating circumstance charge (*id.* at 2510) on the one hand, and brief, vague language regarding mitigating circumstances on the other.  Thus it is possible that a reasonable jury failed to understand that it could consider any aspect of Petitioner's character and background, as well as residual doubt, in mitigation of punishment.

72.     The Supreme Court has consistently made it clear that jury instructions that preclude the sentencer's consideration of mitigating circumstances violate the Eighth Amendment.  *See, e.g.*, *Hitchcock v. Dugger*, 481 U.S. 393 (1987).  *Peek* is not to the contrary. The relevant part of the court's instructions in *Peek* not only were considerably more detailed than the charge in this case, but, significantly, the trial judge gave the jury an example of a mitigating circumstance—the absence of a prior criminal record.  So while the charge in *Peek* contained a "helpful, common sense example of aggravating and mitigating evidence," 748 F.2d at 1490, the same cannot be said of the charge in this case.  Furthermore, after the *en banc* court of the Eleventh Circuit decided *Peek*, the United States Supreme Court decided *Mills v. Maryland*, 486 U.S. 367 (1988), *Franklin* and *Penry*.  These decisions make it clear that a court must carefully scrutinize the instructions at the penalty phase of a capital trial in order to ensure

-40-

that all mitigating evidence is properly considered.  Careful scrutiny of the record of Petitioner's sentencing proceeding demonstrates that the instructions given there did not ensure that the available mitigating evidence would be considered by his jury.

73.     While the court repeatedly instructed the jury that it could sentence Petitioner to death if it found an aggravating circumstance or circumstances, the court's failure to instruct the jurors on what constituted mitigating evidence resulted in a jury charge that instructed the jurors how to sentence Petitioner to death, but failed to instruct them how to sentence him to life. Moreover, the court provided the jury with copies of the instructions on the aggravating factors and the verdict form, which also included the aggravator.[12]  Noticeably absent from the court's instruction, however, was the idea that the mitigating circumstances could reduce the *punishment*, and not just the moral culpability or blame.

74.     The trial court thus utterly failed in its constitutionally imposed duty to "guide and focus the jury's consideration of mitigating circumstances."  *Peek*, 784 F.2d at 1494.  While explicit definition of mitigating circumstances and their function is not required in every case, it is required that "it be clear from the jury instructions considered in context that a reasonable jury could not have misunderstood the meaning and function of mitigating circumstances."  *Id.*  In Petitioner's case, there exists a reasonable possibility the meaning and function of mitigating circumstances were lost on a jury that was instructed that mitigation went to moral culpability or blame, but that was not told that mitigation was relevant in the consideration of punishment.  The outcome of Petitioner's sentencing hearing was clearly and actually prejudiced by the improper and inadequate instructions.

---

[12] No similar materials were given the jurors regarding mitigating circumstances.

75.     The jurors were also given unbridled discretion to impose life or death for any reason or no reason at all, upon the finding of one statutory aggravating circumstance.  This unbridled discretion is prohibited by the Eighth and Fourteenth Amendments, and produced unreliable results in this case.  This error was compounded by the fact that the jurors were given vague instructions on the statutory aggravator they were to consider, in violation of the Eighth and Fourteenth Amendments.

**B.     Unanimity**

76.     In its charge to the jury at sentencing, the trial court stated that "your verdict as to penalty must be unanimous."  Transcript p. 2513.  The trial court's instructions regarding unanimity of the sentence were an incorrect statement of the law.  In a murder prosecution where the jury may impose only life imprisonment or death, "if the convicting jury is unable to agree on which of those two sentences to impose, the trial judge must impose the lesser, life imprisonment."  *Miller v. State*, 237 Ga. 557, 559, 229 S.E.2d 376, 377 (1976); *see also Hill v. State*, 250 Ga. 821, 301 S.E.2d 269 (1983).  Thus, if just one juror believes that a death sentence is inappropriate, the jury cannot recommend the death penalty and the trial court must impose a sentence of life imprisonment.  O.C.G.A. § 17-10-31.1(c).

77.     The effect of instructing the jury that its sentencing verdict had to be unanimous was to pressure holdout jurors who might otherwise have been predisposed to sentence the defendant to life imprisonment to vote for a sentence of death in an effort to achieve unanimity.  Therefore, by effectively instructing the jury that a life verdict required unanimity, and thereby failing adequately to enlighten the jurors of the consequences of non-unanimity, the trial court denied Petitioner his Sixth, Eighth, and Fourteenth Amendment rights.

78.     Moreover, the court's unanimity instruction likely led the jury to conclude that it could consider only those mitigation factors upon which they agreed unanimously.

79.     Further, the trial court erred by failing to instruct the jury that it must reach a unanimous decision on each aggravating circumstance.

80.     Petitioner's rights to due process, equal protection, a fair trial, and reliable proceedings, pursuant to the Sixth, Eighth, and Fourteenth Amendments to the United States Constitution, *Mills*, 486 U.S. 367; *McKoy v. North Carolina*, 494 U.S. 433 (1990); *Brantley v. State*, 262 Ga. 786, 427 S.E.2d 758 (1993), and other applicable law, were violated by the Court's failure to inform the jury that it did not need to find a mitigating circumstance unanimously before considering it and that it must reach a unanimous decision on each aggravating circumstance.  This is erroneous and must lead to a vacatur of Petitioner's death sentence.

### C.     Witness Credibility

81.     The trial court failed to give the jury any guidance on its duty to assess the credibility of witnesses.  Assessing the "credibility of a witness is a matter to be determined by the jury under proper instructions from the court."  O.C.G.A.   § 24-9-80.  Because of the importance of witness testimony and the failure of the trial court to instruct the jury to assess credibility, the Petitioner's sentencing was unfair and unreliable and therefore denied Petitioner his rights under the Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

### D.     Non-Statutory Aggravating Circumstances

82.     The trial court failed to instruct the jury that the prosecution bore the burden of proof regarding non-statutory aggravating circumstances.  As a result, the jury likely wrongly believed that it was free to accept even minimal evidence about Petitioner's gang involvement and prior bad acts and that Petitioner bore the burden of disproving such circumstances.

83.     The trial court's vague, misleading and improper instructions denied Petitioner the fair and reliable sentencing hearing to which he was entitled under the Sixth, Eighth and Fourteenth Amendments.[13]

**Claim Eleven:**          **Misleading Argument and Misconduct by the Prosecution and Its Agents Deprived Petitioner of His Constitutional Rights to Due Process and a Fair Trial in Violation of the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.**

84.     All other claims and allegations in this Petition are incorporated in this Claim by this reference.

85.     The prohibition against cruel and unusual punishment imposed by the United States Constitutions requires that the capital trial and sentencing proceeding be fair and reliable. *See, e.g.*, *Gardner v. Florida*, 430 U.S. 349 (1977); *Woodson v. North Carolina*, 428 U.S. 280 (1976); *Sermons v. State*, 262 Ga. 286, 417 S.E.2d 144 (1992).   A death sentence predicated in part on evidence or argument that is materially inaccurate violates due process and the prohibition against cruel and unusual punishments.  *See Johnson v. Mississippi*, 486 U.S. 578 (1988); *Duest v. Singletary*, 967 F.2d 472, 483 (11th Cir. 1992); *Devier v. Zant*, 3 F.3d 1445 (11th Cir. 1993).  At Petitioner's trial, the prosecution argued during the sentencing phase that Petitioner fired the shotgun that killed Donovan Parks; in the later trial of Petitioner's co-defendant, Butts, however, the same prosecutor argued that Butts fired the shotgun.  To execute Petitioner on the basis of this record violates his rights under the Fifth, Sixth, Eighth, and Fourteenth Amendments to the United States Constitution.

---

[13] To the extent that counsel failed to raise or litigate the issue of the trial court's improper penalty-phase instructions effectively during trial, counsel's deficient performance was unreasonable and Petitioner was prejudiced thereby.  *Strickland*, 466 U.S. 668.  But for counsel's individual and/or cumulative unprofessional errors at all phases of his capital proceeding there is a reasonable probability that the result of the proceedings would have been different.  *Id.*  To the extent that counsel failed to realize and litigate these issues effectively on appeal, counsel rendered constitutionally ineffective assistance of counsel and Petitioner was prejudiced thereby.  *Williams*, 87 F.3d at 1210.

86.     Petitioner's rights to due process and a fair trial were violated by improper and prejudicial remarks by the prosecution in its opening statement to the jury and in its closing arguments in both the guilt/innocence phase and sentencing phase of trial.  For example, the prosecution implored the jurors to place themselves in the position of the victim, argued matters outside the evidence, engaged in highly prejudicial theatrics by brandishing the murder weapon, and made other statements calculated to inflame the jury's passions so that they would render a verdict and sentence based on emotion and not the facts and law.

87.     Petitioner's rights to association, due process, and a fair trial were further violated by the prosecution's use of highly inflammatory evidence pertaining to gang activity without any evidentiary basis for linking the Parks murder with gang activity, as required under *Dawson*, *supra*.  Further, evidence and "expert" testimony pertaining to gangs and gang activity presented by the was materially inaccurate and unreliable, resulting in a fundamentally unfair sentencing.

88.     Petitioner's rights to due process and a fair trial were further violated when the prosecutor sought a sentence of death based solely on the argument that Petitioner fired the shotgun blast that killed the victim, when in fact the prosecutor believed, and had compelling evidence to believe, that Petitioner's co-defendant, Robert Butts, was the triggerman.  This misconduct was confirmed when the same prosecutor tried, convicted, and obtained a death sentence against Butts, based solely on the argument that he was the triggerman.

89.     The prosecution suppressed information favorable to the defense, in that it was exculpatory, incriminating of another, or would suggest bias or motivation to fabricate on the part of prosecution witnesses, and the materiality of the suppressed information undermines confidence in the outcome of Petitioner's trial, and Petitioner's direct appeal, in violation of *Brady v. Maryland*, 373 U.S. 83 (1963) and *Kyles v. Whitley*, 514 U.S. 419 (1995).  The

Prosecution took advantage of Petitioner's ignorance of the undisclosed favorable information by making arguments to the jury that it knew or should have known to be materially inaccurate and/or misleading. *DeMarco v. United States*, 928 F.2d 1074 (11th Cir. 1991); *United States v. Sanfilippo*, 564 F.2d 176, 179 (5th Cir. 1977). The Prosecution allowed its witnesses to convey a false impression to the jury, and there is a reasonable likelihood that the false impression affected the jury. *Giglio v. United States*, 405 U.S. 150 (1972); *U.S. v. Bagley*, 473 U.S. 667 (1985). A death sentence resting on inaccurate or misleading testimony knowingly presented by the state is an infringement on the accused's Fifth, Sixth, Eighth, and Fourteenth Amendment rights. *Id.*[14]

**Claim Twelve:**     **The Unified Appeal Procedure Violated Petitioner's Rights Under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.**

90.     All other claims and allegations in this Petition are incorporated in this Claim by this reference.

91.     On its face and as applied to Petitioner's case, O.C.G.A. § 17-10-36 (Unified Appeal Procedure) denied Petitioner's rights as guaranteed by the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.

92.     The Unified Appeal Procedure, (hereinafter "UAP"), requires the trial court to hold "conferences" with the defendant, defense counsel and the prosecutor at various stages throughout the course of a capital case. At each conference, the court makes inquiries of counsel as to whether the defense will raise various issues at that particular stage of the proceeding, and further inquiries of the defendant as to whether he waived issues that have been discussed and

---

[14] To the extent that Petitioner's counsel failed to argue, develop, or present these issues, failed to adequately preserve objections thereto, or failed to effectively litigate these issues on direct appeal, Petitioner's counsel rendered ineffective assistance, and Petitioner was prejudiced thereby.

not raised.  The prosecutor is present at each conference.  For the reasons set forth below, this procedure violates the above enumerated rights of a defendant, and did so in Petitioner's case.

93.     The UAP violates important due process considerations in the following respects: First, it upsets the balance of power between the state and the accused in the adversarial system by forcing the defense throughout the proceedings to disclose strategy and tactics.  The net effect is to confer the benefit upon the state of learning at various junctures of the case the intentions of the defense without itself having to disclose any information.

94.     The UAP also violates a defendant's right to silence.  When represented by counsel, a criminal defendant enjoys the right to be heard through counsel.  Under the UAP, this right is not honored, as repeated inquiries are made of the defendant about strategy and satisfaction with counsel.  At Petitioner's trial, the court repeatedly inquired of him as to his satisfaction with his attorney.

95.     The UAP violates the right to counsel in at least three respects.  The process of regularly asking counsel what issues he or she will raise necessarily results in a disclosure of counsel's trial strategy in violation of the work product privilege.  This occurred several times during Petitioner's trial.  Second, the procedure requires the defendant at each conference to inform the court whether he or she is satisfied with the services of counsel.  The assessment of whether counsel is serving effectively during trial is an impossible task to impose upon a lay person who is also under the strain of trial and a possible death sentence.  Furthermore, the procedure does not provide the defendant with independent counsel to assist in making this judgment.  Third, the procedure thrusts the court directly into the attorney-client relationship and requires counsel to advise the defendant on issues that have little, if any, relevance to the case, and that take away from time better spent on relevant issues.

96.     The UAP also denies a capital defendant his right to equal protection under the law.  For no rational reason, the UAP imposes the above-cited costs upon the capital defendant and not other criminal defendants.

97.     Because of the many costs imposed upon the capital defendant by the UAP, the reliability of the trial and sentencing hearing is diminished to the detriment of the right to be tried in a fundamentally fair proceeding.  Because Petitioner was tried, convicted, and sentenced pursuant to this procedure, he was denied minimal fairness and the reliability essential in capital cases.[15]

**Claim Thirteen:      Petitioner's Trial Was Fraught With Procedural and Substantive Errors That Cannot Be Harmless When Viewed as a Whole Since the Combination of Errors Deprived Him of the Fundamentally Fair Trial Guaranteed Under the Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.**

98.     All other claims and allegations in this Petition are incorporated in this Claim by this reference.

99.     In *Matthews v. Eldridge*, the United States Supreme Court stated:

[Our] decisions underscore the truism that "[d]ue process," unlike some legal rules, is not a technical conception with a fixed content unrelated to time, place and circumstances.  *Cafeteria Workers v. McElroy*, 367 U.S. 886, 895 (1961).  *"[D]ue process is flexible and calls for such procedural protections as the particular situation demands*."  *Morrissey v. Brewer*, 408 U.S. 471, 481 (1972).  Accordingly, resolution of the issue whether the administrative procedures provided here are constitutionally sufficient requires analysis of the governmental and private interests that are affected.  *Arnett v. Kennedy*, 416 U.S., at 167-58 (Powell, J., concurring in part); *Goldberg v. Kelly*, 397 U.S. 254, 263-266 (1970); *Cafeteria Workers v. McElroy*, 367 U.S., at 895.  More precisely, our prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors:  First, the private interest that will be affected by the official action; second, the risk of an erroneous

---

[15]  To the extent that Petitioner's counsel failed to argue, develop, or present these issues, failed to adequately preserve objections thereto, or failed to effectively litigate these issues on direct appeal, Petitioner's counsel rendered ineffective assistance, and Petitioner was actually prejudiced thereby.

deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and finally, the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail." *See, e.g.*, *Goldberg*, 397 U.S., at 263-71.

424 U.S. 319, 334-35 (1976) (emphasis added).

100.    *Matthews* dealt with the fundamental question of the necessity of requiring formal hearings on disputed issues affecting a citizen's basic liberties.  The Supreme Court's analysis of the considerations regarding the necessity of procedural safeguards is highly enlightening and instructive.  *Matthews* teaches that it is simply not enough for the Government to provide "a process" to dispose of disputed matters.  Rather, the process must be fair to all parties and must be flexible enough to accommodate the particular litigation involved.  A capital defendant has a "constitutional right to a fair trial regardless of . . . [the crime]."  *Heath v. Jones*, 941 F.2d 1126, 1131 (11th Cir. 1991).

101.    Petitioner contends that he did not receive the fundamentally fair trial to which he was entitled under the Fifth, Sixth, Eighth and Fourteenth Amendments.  It is Petitioner's contention that the process itself has failed him.  It has failed because the sheer number and types of errors involved in his trial, when considered as a whole, virtually dictated the sentence that he would receive.

102.    The flaws in the system that sentenced Petitioner to death are many.  They have been pointed out throughout not only in this Petition for Writ of Habeas Corpus, but also in Petitioner's direct appeal, motion for new trial and Amended Petition for Writ of Habeas Corpus filed in state court; and while there are means for addressing each individual error, the fact is that addressing these errors on an individual basis will not afford adequate safeguards against an improper conviction and improperly imposed death sentence – safeguards that are required by the United States Constitution.

103.     The United States Supreme Court has consistently emphasized the uniqueness of death as criminal punishment.  Death is "an unusually severe punishment, unusual in its pain, in its finality, and in its enormity."  *Furman*, 408 U.S. at 287 (Brennan, J., concurring).  It differs from lesser sentences "not in degree but in kind.  It is unique in its total irrevocability."  *Id.* at 306 (Stewart, J., concurring).  The severity of the sentence "mandates careful scrutiny in the review of any colorable claim of error."  *Zant v. Stephens*, 462 U.S. 862, 885 (1983).  Thus, greater caution and safeguards must be utilized to ensure the constitutional validity of each death sentence:

> Death is a different kind of punishment from any other which may be imposed in this country. . . .  From the point of view of the defendant, it is different in both its severity and its finality.  From the point of view of society, the action of the sovereign in taking the life of one of its citizens also differs dramatically from any other legitimate state action.  It is of vital importance to the defendant and to the community that any decision to impose the death sentence be and appear to be based on reason rather than caprice or emotion.

*Gardner v. Florida*, 430 U.S. 349, 357 (1977) (citations omitted).

104.     This same principle was posited in *Woodson v. North Carolina*, 428 U.S. 280 (1976):

> Death, in its finality, differs more from life imprisonment than a 100-year prison term differs from one of only a year or two.  *Because of that qualitative difference, there is a corresponding difference in the need for reliability in the determination that death is the appropriate punishment in a specific case*.

*Id.* at 305 (emphasis added).

105.     This rationale has been applied to *both* the sentencing and guilt-innocence phases of a capital defendant's trial:

> To insure that the death penalty is indeed imposed on the basis of "reason rather than caprice or emotions," we have invalidated procedural rules that tended to diminish the reliability of the sentencing determination.  *The same reasoning must apply to rules that diminish the reliability of the guilt determination.*

*Beck v. Alabama*, 447 U.S. 625, 638 (1980) (emphasis added).

106.     Petitioner contends that numerous and varied violations occurred at both stages of his trial.  However, the claims that arise as a result of Petitioner's trial should not only be considered separately.  Rather, it is Petitioner's contention that, for the same reasons each claim of error in a capital case must be carefully scrutinized, the claims should also be considered in the aggregate, for when the separate infractions are viewed in their totality, it is clear that Petitioner did not receive the fundamentally fair trial to which he was entitled under the Eighth and Fourteenth Amendments.  The numerous constitutional claims in this petition show that this trial was fundamentally flawed.

107.     A series of errors may accumulate a very real, prejudicial effect.  The burden remains on the state to prove that the individual errors did not affect the verdict, and more importantly, that the cumulative impact of these errors did not affect the verdict.  In Petitioner's case, relief is proper.

108.     Petitioner was not afforded the fundamentally fair trial to which he was entitled under the Fourth, Fifth, Sixth, Eighth and Fourteenth Amendments to the United States Constitution.  The failure of defense counsel to prepare for and present an adequate defense of his client's life, the errors on the part of the trial court, as well as the state misconduct in this case, virtually dictated what the verdict and sentence would be in this case.  Relief is mandated.[16]

**PRAYER FOR RELIEF**

WHEREFORE, Petitioner respectfully prays that this Court:

1.     Review the claims alleged in this petition on the merits;

---

[16] To the extent defense counsel failed to litigate this issue effectively at trial or on appeal, counsel performed ineffectively and Petitioner was actually prejudiced thereby.

2.      Issue a Writ of Habeas Corpus to have Petitioner brought before it to the end that he may be discharged from his unconstitutional confinement and restraint, and/or be relieved of his unconstitutional sentence of death;

3.      Permit Petitioner, who is indigent, to proceed *in forma pauperis*;

4.      Grant Petitioner, who is indigent, sufficient funds to secure the expert and investigative assistance necessary to prove the facts as alleged in this petition;

5.      Grant Petitioner the authority to obtain subpoenas *in forma pauperis* for witnesses and documents necessary to prove the facts as alleged in this petition;

6.      Allow discovery, pursuant to Rule 6, Rules Governing Section 2254 Cases In the United States District Court;

7.      Conduct a hearing at which proof may be offered concerning the allegations of this petition;

8.      Allow Petitioner to amend this petition after the assistance of experts and discovery, and in the event of any other changes in the law or facts relevant to his case;

9.      Allow Petitioner to brief the precedential and statutory law relevant to his case in light of the record and allegations raised by this petition;

10.     Allow Petitioner to respond to any procedural or affirmative defense, and to any other arguments that the Respondent might raise in this action; and

11.     Grant such other relief as may be appropriate.

Dated this 17th day of December, 2010.

Respectfully submitted,

_____
Brian S. Kammer (Ga. No. 406322)
Georgia Resource Center
303 Elizabeth St., NE
Atlanta, Georgia 30307
(404) 222-9202
georgiaresource@mindspring.com

COUNSEL FOR PETITIONER

IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF GEORGIA
MACON DIVISION

MARION WILSON, JR.,                     )
                                        )
                    Petitioner,         )
                                        )          Civil Case No. _____
v.                                      )
                                        )
STEPHEN UPTON, Warden,                  )
Georgia Diagnostic Prison,              )
                                        )
                    Respondent.         )

**NOTICE OF ELECTRONIC FILING AND CERTIFICATE OF SERVICE**

This is to certify that on December 17, 2010, I electronically filed the foregoing with the

Clerk of the Court using the CM/EMF system which will send notification of such filing to the

following: Beth Burton (bburton@law.ga.gov).  I also certify that I have served the foregoing

document and this notice of electronic filing on Respondent this day by electronic mail directed

to:

> Beth Burton, Esq.
> Senior Assistant Attorney General
> bburton@law.ga.gov

_____
Brian S. Kammer (Ga. No. 406322)
Georgia Resource Center
303 Elizabeth St., NE
Atlanta, Georgia 30307
(404) 222-9202
georgiaresource@mindspring.com

COUNSEL FOR PETITIONER